UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:19-CR-00033-DCR-EBA-1

(Related Civil Action No. 5:22-CV-00258-DCR-EBA)

UNITED STATES OF AMERICA,                                                              PLAINTIFF,

V.                          **REPORT AND RECOMMENDATION**

CLARK D. YOUNG,                                                                        DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

## I. BACKGROUND

On May 20, 2019 Clark Young entered pleas of guilty to possession of a firearm by a convicted felon, and possession of a controlled substance, cocaine. The Presentence Report reflected that the United States Probation Office recommended an Armed Career Criminal Act (ACCA) enhancement pursuant to 18 U.S.C. § 924(e) because Young "ha[d] at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions." [*Id.* at pg. 5].

When pronouncing sentence, the Court stated:

> It's the judgment of this Court that the defendant, Clark D. Young, be hereby committed to the custody of the Bureau of Prisons to be incarcerated for a period of two years—**230 months on Count 1, and 30 months on Count 2, to run concurrently for a total term of 200 months**, which shall run concurrently to the defendant's parole revocations in the Fayette County Circuit Court case numbers 11-CR-1486 and 12-CR-71.

[R. 42 at pg. 10] (emphasis added). The Court entered its Judgment the same day, sentencing Young to a **total of 230 months' incarceration**. [R. 28].

On September 11, 2019, counsel for Young and the United States jointly moved to clarify

the Court's Judgment, stating the parties understood the Court to announce a sentence different than that which appeared on the Judgment. [R. 29]. Specifically, Liechty understood the Court to announce a sentence of 200 months, which differed from the 230-month sentence appearing on the Judgment. Upon conferring with counsel for the United States, who also believed there was a discrepancy, Liechty and the government jointly moved to clarify the Judgment. The Court denied the motion, stating that the Judgment "accurately reflect[ed] the Court's intention that Young be sentenced to 230 months imprisonment on Count 1, and 30 months imprisonment on Count 2, to run concurrently, for a total of 230 months imprisonment." [R. 30].

On direct appeal, Young was represented by appointed CJA counsel Thomas A. Rein. [R. 38]. There, Young raised one claim that the Court delivered an inconsistent, and therefore incorrect sentence; and one claim of ineffective assistance of counsel for Liechty's failure to object or question the Court's inconsistent sentence during the sentencing hearing. The United States moved to dismiss the appeal, which the Sixth Circuit granted because (1) Young's appellate waiver barred such claims except those of ineffective assistance of counsel; and (2) the Court of Appeals does not generally rule on claims of ineffective assistance of counsel on direct appeal. *United States v. Young*, No. 19-6075, 2020 U.S. App. LEXIS 39040, at *2 (6th Cir. Dec. 11, 2020).

On June 9, 2021, Young filed a petition for a writ of certiorari with the United States Supreme Court. On October 6, 2021, the Supreme Court denied Young's petition. Young timely filed the instant petition on September 29, 2022. The United States filed an Answer to Young's motion, and tendered an affidavit from Young's trial counsel, Liechty. [R. 64 & 64-1]. The United States avers that Young has failed to demonstrate that his counsel's performance at trial or appellate proceedings was constitutionally deficient. Young replied, reiterating the same arguments as advanced in his original motion. [R. 69].

## II. LEGAL STANDARD

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. A prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

## III. ANALYSIS

### A.  Ineffective Assistance of Counsel

Young argues that his sentence should be vacated in light of the ineffective assistance he received at both the trial and appellate levels of his case. Construing Young's petition leniently, the Court identifies the following claims:

1. Trial counsel failed to investigate Young's prior offenses, and therefore did not discover that they do not qualify as predicate offenses for an enhancement under the Armed Career Criminal Act.
2. Trial counsel failed to object to the United States' notice that it would be seeking a statutory enhancement.
3. Trial counsel failed to file any pretrial motions.
4. Trial counsel failed to object to the PSR.

      5. Trial counsel failed to object at the sentencing hearing.

      6. Appellate counsel failed to investigate viable appellate claims on appeal.

      7. Appellate counsel improperly argued ineffective assistance of trial counsel on direct appeal.

[R. 57].

To successfully assert ineffective assistance of counsel, Young must show two essential elements for each claim: (1) deficient performance by counsel and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

First, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show representation fell below an objective standard of reasonableness, Young must articulate specific acts or omissions to show how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. Courts must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, Young bears the burden of showing that his counsel "made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Second, Young must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 696)). "When deciding ineffective-assistance claims, courts need not address both components of

the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

**1. Trial Counsel Failure to Investigate and/or object to consideration of Prior Offenses.**

Young contends that the Kentucky convictions underpinning his ACCA enhancement do not meet either the definition of a "violent felony" or "serious drug offense." Young avers that counsel's failure to investigate his past convictions, and the treatment of those convictions under the ACCA prejudiced him because his Armed Career Criminal designation established a mandatory minimum sentence of 15 years.

The ACCA provides that a person who violates 18 U.S.C. § 922(g) and has three previous convictions for either a (1) violent felony or (2) serious drug offense, all occurring on different occasions, shall be deemed an Armed Career Criminal subject to a minimum term of 15 years' imprisonment. 18 U.S.C. § 924(e)(1); *United States v. Mayes*, 928 F.3d 502, 503 (6th Cir. 2019). According to the PSR, there are four convictions that could be predicate offenses for ACCA purposes: two separate instances of trafficking in a controlled substance in the first degree; assault in the second degree; and manslaughter in the second degree.[1]

---

[1] The conduct underlying Young's convictions of assault in the second degree and manslaughter in the second degree were committed on the same "occasion" on October 10, 2011, where Young shot at two individuals with a handgun. For the purposes of the ACCA, these offenses, together, could not both be used to trigger an enhancement. However, for purposes of this analysis (and because Young asserts neither conviction could be a predicate offense under the ACCA), the Court shall consider each conviction and whether it qualifies as ACCA predicate offense.

Under the ACCA, a violent felony includes an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *United States v. Wilson*, 978 F.3d 990, 993 (6th Cir. 2020). Likewise, a "serious drug offense" can be "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" § 924 (e)(2)(A)(ii).

For both violent felonies and serious drug offenses, courts apply the categorical approach and "look[] 'only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and not to the particular facts underlying those convictions.'" *Mayes*, 928 F.3d at 504 (quoting *Descamps v. United States*, 570 U.S. 254, 261, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013)); *United States v. Williams*, 39 F.4th 342, 344 (6th Cir. 2022). In practice, this means courts "compare the elements of the statute forming the basis of the defendant's conviction" with elements of the "generic crime." *Descamps*, 570 U.S. at 257. For violent felonies, for instance, courts will either compare the elements of the statute of conviction to the elements of one of the enumerated violent felonies (burglary, arson, extortion, or crimes using explosives); or to the elements clause's definition that a violent felony "has as an element the use, attempted use, or threatened use of physical force against the person of another." Similarly, when conducting a categorical approach to state drug convictions, the primary inquiry is whether the offense involved "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance[.]" *Shular v. United States*, 140 S. Ct. 779, 784 (2020) (quoting 18 U.S.C. § 924(e)(2)(A)(iii). Under the categorical approach, if a state conviction involved drugs but does not involve the conduct described in § 924(e)(2)(A)(iii), it is not a serious drug offense under the ACCA. For the reasons that follow, the Court properly classified Young as an Armed Career Criminal, and correctly imposed an enhanced sentence.

**a. Trafficking Controlled Substances.** In 2006, Young was twice convicted for trafficking in a controlled substance in the first degree in violation of KRS § 218A.1412 which, at the time, provided that "[a] person is guilty of trafficking in a controlled substance in the first degree when he knowingly and unlawfully traffics in: a controlled substance." Ky. Rev. Stat. § 218A.1412(1) (2006). The statute also provided that "[a]ny person who violates the provisions of subsection (1) of this section shall: [f]or the first offense be guilty of a Class C felony." *Id.* at (2)(a). Class C felonies were punishable by up to 10 years in prison. Ky. Rev. Stat. § 532.060(2)(c) (2006).

The Sixth Circuit has specifically held that the exact version of the Kentucky statute under which Young was convicted is an ACCA predicate offense. *Mayes*, 928 F.3d at 506 (holding that amended version of Kentucky statute did not retroactively apply and KRS § 218A.1412(1) violation was an ACCA predicate offense); *United States v. Miles*, No. 21-5481, 2022 U.S. App. LEXIS 11214, at *2 n.1 (6th Cir. Apr. 25, 2022). Consequently, he cannot demonstrate that Liechty was deficient in failing to investigate these offenses because clearly established law indicates that his controlled substance convictions are "serious drug offenses" under the meaning of the ACCA.

**b. Assault.** In 2014, Young was convicted of assault, second degree, in violation of Ky. Rev. Stat. § 508.020 after shooting two individuals with a handgun. The statute provides that a person is guilty of assault in the second degree when:

> (a) He intentionally causes serious physical injury to another person; or
>
> (b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or
>
> (c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

Ky. Rev. Stat. § 508.020(1)(a)–(c). Assault in the second degree is also a Class C felony punishable by up to 10 years in prison. *Id.* at (2); Ky. Rev. Stat. § 532.060(2)(c).

To determine whether a conviction under a state statute is a "violent felony" and therefore a predicate offense for ACCA purposes, the Supreme Court instructs courts to employ the categorical approach to decide whether § 508.020 falls under the elements clause's definition of the "use of physical force against the person of another." *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021); *see Williams*, 39 F.4th at 344. Importantly, "[i]f any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." *Borden*, 141 S. Ct. at 1822 (citing *Johnson v. United States*, 559 U. S. 133, 137, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010)).

On the face of the ACCA, a "violent felony" requires (1) the "use, attempted use, or threatened use of physical force" (2) "against the person of another." In Young's case, both elements are satisfied for purposes of the categorical approach. In this case, and with regard to second-degree assault in Kentucky, each subsection requires the actor to "cause[] serious physical injury to another person." Ky. Rev. Stat. § 508.020(1)(a)–(b). "Serious physical injury" means "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." Ky. Rev. Stat. § 500.080(17). Categorically, each subsection does inherently require a person convicted under that statute to have used physical force against the person of another.

However, Young argues that the categorical approach also requires courts to determine the required mental state, or *mens rea*, for both the ACCA elements clause and Kentucky second-degree assault statute. Initially, the Court notes that, in Kentucky, assault in the second degree cannot be committed "recklessly" as Young claims.[2] Rather, the lowest required mental state for

---

[2] Assault in the third and fourth degrees can be committed with a "reckless" mental state. Ky. Rev. Stat. § 508.025(1)(a), § 508.030(1)(b).

a second-degree assault conviction is "wantonly." KRS § 508.020(1)(c). Under Kentucky law, a reckless mental state requires that a person "**fails to perceive** a substantial and unjustifiable risk," Ky. Rev. St. §501.020(4) (emphasis added), whereas a wanton mental state requires that a person "**is aware of and consciously disregards** a substantial and unjustifiable risk," *Id.* at (3) (emphasis added). Thus, the United States asserts that whether Young violated Ky. Rev. Stat. § 508.020 (1)(b) or (c) is inapposite, because the result would be the same since he "he consciously disregarded a risk, rather than failed to perceive the risk." [R. 64 at pg. 7]. Relevant to the United States' position is the Supreme Court's recent holding in *Borden*, where a plurality held that, for a crime to be considered a "violent felony" for purposes of an ACCA enhancement, a person's mental state must be more than "reckless." *Borden*, 141 S. Ct. at 1825.

When determining whether a defendant convicted of reckless aggravated assault under Tennessee law could receive an ACCA enhancement, the *Borden* plurality determined that a "violent felony" refers to a "category of violent, active crimes." *Borden*, 141 S. Ct. at 1824 (2021) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377 (2004)). As such, the crimes requiring a "reckless" mental state cannot be predicate offenses for ACCA purposes, because "violent, active crimes" not only involve a "substantial degree of force, but also a purposeful or knowing mental state—a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Borden*, 141 S. Ct. at 1830 (2021). For instance, the Court highlighted that a DUI offense usually requires mental states of recklessness or negligence and, while an offender may be "'moral[ly] culpab[le],' [the offense] does not fit within 'the ordinary meaning of the term violent crime.'" *Borden*, 141 S. Ct. at 1830 (quoting *Oyebanji v. Gonzales*, 418 F. 3d 260, 264 (3d Cir. 2005)).

Under current Supreme Court and Sixth Circuit precedent, crimes committed wantonly may be used as ACCA predicate offenses. Critically, *Borden* solely contemplated the mental states as enumerated under the Model Penal Code: purposefully, knowingly, recklessly, and negligently.

*Borden*, 141 S. Ct. at 1823–24 (2021). Thus, on the *Borden* scale, a person is reckless when "he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." *Borden*, 141 S. Ct. 1817, 1824 (2021) (citing MODEL PENAL CODE §2.02(2)(c); *Voisine v. United States*, 579 U. S. 686, 136 S. Ct. 2272, 195 L. Ed. 2d 736, 743 (2016). The reckless mental state under the Model Penal Code—and utilized by *Borden*—is nearly identical to the wanton mental state in Kentucky, which provides a person acts wantonly when:

> he is aware of and **consciously disregards a substantial and unjustifiable risk** that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes **a gross deviation from the standard of conduct that a reasonable person would observe** in the situation.

Ky. Rev. Stat. § 501.020(3) (emphasis added). However, *Borden* expressly declined to address the ACCA' treatment of mental states between "knowingly" and "recklessly"—such as a wanton mental state. *Borden*, 141 S. Ct. at 1825 n.4.

The Sixth Circuit has also declined to take *Borden*'s holding any farther. When considering whether a conviction under Kentucky's murder statute, which includes alternative elements which only require a wanton mental state, the Sixth Circuit acknowledged that there were mental states above recklessness that do not quite reach the "knowledgeable" threshold. *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022). Nonetheless, *Harrison* ultimately decided not to extend *Borden* to a wanton mental state under Kentucky law, consistent with other circuits. *Id.* (collecting cases).

As the Sixth Circuit expressly decided that *Borden* does not extend to Kentucky's wantonness *mens rea*, Young's argument that his second-degree assault charge should not have been used as an ACCA predicate offense is unavailing. Further, and because Young's arguments do not hold water, he also fails to satisfy the first prong of *Strickland*. He has not demonstrated that his attorney failed to adequately investigate his second-degree assault charge as it relates to

his ACCA enhancement.

Alternatively, Young argues that his second-degree assault conviction cannot be an ACCA predicate offense because he entered an Alford plea on the charge. An Alford plea, sometimes called a best-interest plea, is a plea of guilty that constitutes a criminal conviction which allows a defendant to enter a plea without acknowledging guilt. *See United States v. McMurray*, 653 F.3d 367, 381 (6th Cir. 2011) (overruled on other grounds by *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2018)) ("For a conviction resulting from an Alford-type guilty plea, the defendant has necessarily admitted to the elements of the charge but not necessarily the underlying factual basis[.]"). "[T]he fact that a plea is an Alford-type plea does not prevent the resulting conviction from ever serving as a predicate conviction for sentence enhancement[,]" so long as the "statute of conviction is categorically a 'violent felony[.]'" *McMurray*, 653 F.3d at 381 (6th Cir. 2011). As established above, Young's second-degree assault charge qualifies as a violent felony. Accordingly, his Alford plea is immaterial to whether the conviction may serve as an ACCA predicate offense.

Neither Young's Alford plea nor the statute's use of a "wanton" *mens rea* impact whether his second-degree assault conviction may be used to support an ACCA enhancement. Consequently, Young cannot demonstrate that Liechty's performance was deficient for failing to investigate his convictions further. Counsel is not required to advance arguments that are frivolous on their face to avoid a charge of ineffective assistance. *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986). Nor can counsel be ineffective when she does not raise a groundless claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001). So, he fails on the first *Strickland* prong.

**c. Manslaughter.** Young was arrested for murder associated with the same handgun shooting underlying his assault charge. His murder charge was amended down to manslaughter in the second degree. He was convicted in 2014. At that time, the statute provided that "[a] person

is guilty of manslaughter in the second degree when he wantonly causes the death of another person." Ky. Rev. Stat. § 507.040(1) (2014).  Further, second degree manslaughter was classified as a Class C felony. *Id.* at (2).

Much like with his assault charge, Young contends that a Kentucky second-degree manslaughter conviction cannot be used as a predicate offense under the ACCA because it is not a "violent felony." [R. 57-2 at pg. 6]. Again, the lowest mental state required to commit second-degree manslaughter is "wantonness." For the same reasons discussed above in the context of his second-degree assault conviction, Young's second-degree manslaughter conviction may also be used as a predicate offense for an ACCA enhancement. *Borden* expressly declined to consider any mental states that might be between "knowledgeable" and "reckless," and the Sixth Circuit has followed suit. *Harrison*, 54 F.4th at 890. Thus, Young's manslaughter conviction would also qualify as an ACCA predicate offense. As a result, Young cannot satisfy the first *Strickland* prong to show that Liechty was constitutionally deficient in investigating his manslaughter charge, when such an investigation would have revealed that manslaughter in the second degree is a predicate offense under the ACCA.

**2. Trial Counsel's Failure to Object at Sentencing Hearing.**

Young asserts that his trial counsel deficiently performed at sentencing by failing to object to the Court's delivery of his sentence. Specifically, he maintains that, when the Court erroneously announced that he was sentenced for a total of 200 months, that his attorney should have objected to the sentence itself.

Indeed, when the Court announced his sentence, stating "200 months" instead of "230 months," Liechty did not object. In her affidavit, she states that when she heard the District Judge deliver the sentence, she understood Young's sentence to be 200 months. It was only upon receiving a copy of the Judgment that she perceived an inconsistency. In other words, she would

have only been able to object *at* Young's sentencing hearing with the benefit of hindsight—and *Strickland* nor its progeny requires clairvoyance for an attorney to be considered effective under the Sixth Amendment. Moreover, after realizing there was an inconsistency between the sentence delivered and the sentence provided by the Judgment, Liechty and the United States jointly moved to clarify the Court's Judgment. [R. 29].

Young contends she should have moved to clarify sooner, on the day of his sentencing but, again, Liechty could have only done so with the benefit of hindsight. Moreover, Liechty and the United States' counsel jointly moved the Court to clarify its Judgment only two days after Young was sentenced, which is far from an unreasonable amount of time to consult opposing counsel, research applicable law, draft a motion, and obtain opposing counsel's agreement to join the motion. While the Court denied the motion and stated that the sentence in the Judgment—230 months total—reflected the Court's intention, the Court did not indicate that a more prompt motion would have altered Young's ultimate sentence. "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *Morrow*, 977 F.2d at 229. Here, Young would not have "won" a lesser sentence, regardless. Thus, the Court does not perceive deficient performance as required by *Strickland*. Even if Liechty's performance was deficient, Young's claim would fail on *Strickland*'s prejudice prong.

**3. Appellate Counsel's Failure to Investigate Other Arguments & Improperly Argued Ineffective Assistance of Counsel on Direct Appeal.**

Young also advances arguments that his appellate counsel was constitutionally ineffective, the first of which is that his attorney, Thomas A. Rein, failed to investigate nonfrivolous issues on appeal. [R. 57-2 at pg. 10–11]. His second argument is that Rein frivolously raised a claim of ineffective assistance of counsel on direct appeal instead of pursuing claims that could be

Page **13** of **18**

meritorious. There is overlap in the facts and analyses underlying both claims, so the Court shall consider them together to determine whether Rein was ineffective on appeal.

A petitioner succeeds on an ineffective assistance of appellate counsel claim if he shows "counsel unreasonably failed to discover nonfrivolous issues," and "a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). When a habeas petitioner alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, a court first examines the merits of the omitted issue. *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). Therefore, to evaluate the merits of an ineffective assistance of appellate counsel claim, the Court must determine the strength of the claim that counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel is not ineffective for failing to raise claims that have little or no chance of success. *Goff v. Bagley*, 601 F.3d 445, 468 (6th Cir. 2010).

Appellate counsel advanced two claims on appeal:

> First, at Defendant's sentencing hearing, the District Court imposed a term of imprisonment of 230 months. Then it imposed a prison term of 200 months. Appellant Clark D. Young submits that he cannot receive two contradictory prison sentences at the same time. [Second], Mr. Young's attorney, at the time of sentencing, did not object or attempt to have the Court explain or correct the discrepancy, and this constitutes ineffective assistance of counsel.

*Young v. United States*, Case No. 19-6075 (6th Cir. Feb. 4, 2020), [R. 26 at pg. 12].

While the first claim raised under appeal is clearly barred by Young's plea waiver, prohibiting a challenge to his sentence on direct appeal, Rein's performance is not necessarily ineffective under the first *Strickland* prong. While the claim was barred by a plea waiver, it is generally accepted that defendants must assert non-constitutional claims "in the ordinary course of . . . direct appeal" or risk procedurally defaulting on the claim. *Grant v. United States*, 72 F.3d 503, 503 (6th Cir. 1996). By raising a sentencing claim on direct appeal, appellate counsel may

have preserved the claim relating to his sentence to be raised on collateral review. *Id.* The mere act of raising the claim on direct of appeal, even if unsuccessful, preserved the claim and protected it from collateral default. Appellate counsel's performance, therefore, was not clearly deficient because he raised a sentencing claim on appeal. Absent deficient performance, Young cannot prove that Rein was ineffective.

The same goes for the second claim raised on appeal—that Young's trial counsel was ineffective. "Ineffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail. Th[e court of appeals] typically will not review a claim of ineffective assistance on direct appeal except in rare cases where the error is apparent from the existing record." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) (citation omitted); *see Robinson v. United States*, 636 F. Supp. 2d 605, 609-10 (E.D. Mich. 2009) (collecting cases). While rarely successful, ineffective assistance claims are not unheard of on direct appeal. Rein's decision to advance the claim on direct appeal, therefore, is not *per se* deficient performance under *Strickland*. Thus, this claim also fails under the first *Strickland* prong.

As to Young's assertion that Rein was ineffective for failing to raise other issues on appeal, his claim is not meritorious. At this juncture, the Court must assess the strength of the claims that Young asserts his counsel failed to raise. *Wilson*, 515 F.3d at 707. Young maintains that appellate counsel should have raised the following issues on appeal: (1) his second-degree manslaughter conviction was improperly used as an ACCA predicate offense; (2) his second-degree assault conviction was improperly used as an ACCA predicate offense; (3) his charging documents, following a modified categorical approach, do not reflect that his drug trafficking convictions constitute a "serious drug offense" under the ACCA. As explained above in the context of Liechty's performance at the trial level, none of Young's ACCA-based claims would have been

meritorious because his drug convictions plainly fall within the definition of a "serious drug offense," and his second-degree manslaughter and assault charges are likewise ACCA predicate offenses because—after following the categorical approach—each constitutes a "violent felony." While appellate counsel could have raised these claims, the strength (or lack thereof) of each claim leads the Court to find that Rein was not deficient for failing to do so. Thus, having failed to demonstrate deficient performance, Young's claim fails under *Strickland*.

### B. Evidentiary Hearing

Young moves for an evidentiary hearing. In § 2255 proceedings, an evidentiary hearing is required unless "the record conclusively shows that the petitioner is entitled to no relief." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citing *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). For the reasons enumerated herein, the record conclusively shows that Young is not entitled to relief as to the claims he has asserted. Accordingly, the undersigned recommends that Young's motion for an evidentiary hearing be denied.

### IV. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Here, Young has not made a "substantial showing" as to any claimed denial of his

constitutional rights. Moreover, the Court is unconvinced that reasonable jurists would find its determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability, should Young request one.

## V. RECOMMENDATION

Upon review of the record and for the reasons stated herein, and in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, **IT IS RECOMMENDED** that:

1. Young's Motion to Vacate Pursuant to 28 U.S.C. § 2255 be **DENIED,** and the matter be **DISMISSED**;

2. Young's motion for an Evidentiary Hearing be **DENIED**; and

3. A Certificate of Appealability be **DENIED** as to all issues raised, should Young so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed March 6, 2023.

